IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TOPPAN PHOTOMASKS, INC., } | |
| } | |
| *Plaintiff*, } | |
| } | |
| v. } | CIVIL ACTION NO. H-05-3201 |
| } | |
| NORTH AMERICAN VAN LINES, INC., } | |
| } | |
| *Defendant*. } | |

**MEMORANDUM OPINION & ORDER**

This Carmack Amendment case concerns damage to a Lasertec MD2100 Photomask Reticle Inspection System (the "Machine"). Pending before the court is Defendant North American Van Lines, Inc.'s ("NAVL's") motion for partial summary judgment as to limited liability (Doc. 17). For the reasons discussed below, the court ORDERS that Defendant's motion for partial summary judgment (Doc. 17) is GRANTED.

**I.    Background and Relevant Facts**[1]

Plaintiff DuPont and Defendant NAVL have a long history of doing business together. In 1998, they entered into a Pricing Agreement and a Schedule of Rates, which govern their shipping arrangements. *See* Pricing Agreement (Doc. 17, Ex. E); Schedule of Rates (Doc. 17, Ex. D). For a reduced shipping rate, DuPont agreed in the Pricing Agreement and the Schedule of Rates to a limitation of NAVL's liability to sixty cents ($0.60) per pound.

On January 6, 2004, Julia Guzman ("Guzman"), DuPont's agent, contacted NAVL for a quote to ship the Machine from Chicago, Illinois to Round Rock, Texas. Guzman spoke with Cecily Haley ("Haley") to arrange the shipment. The two were well-acquainted, having worked together on forty to sixty shipments in the past. Guzman expected the Pricing Agreement and the

---

[1] Plaintiff Toppan Photomasks, Inc.'s ("Toppan's") predecessor is DuPont Photomasks, Inc. ("DuPont"). For the purposes of this opinion, "Toppan" and "DuPont" refer to the same entity.

Schedule of Rates to apply to this shipment; however, she specified that the Machine required air-ride and a climate-controlled truck for transportation because of its sensitivity and expense. Guzman included this request in a "handling alert" she emailed to Haley. *See* "Handling/Transportation Alert!" at ¶ 1 (Doc. 19, Ex. I). Guzman did not request an increase to the $0.60 per pound limitation of liability.

The Machine arrived in Round Rock damaged. DuPont claims that NAVL's failure to provide a climate-controlled van caused the damage. DuPont made a claim on the Machine through its separate insurance policy with Underwriters at Lloyd's, London ("Underwriters"). Underwriters paid DuPont and brought this subrogation action seeking damages against NAVL.

## II.     Legal Standard on Motion for Summary Judgment

A party moving for summary judgment must inform the court of the motion's basis and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *citing U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248. The non-movant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge its burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88. In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

**III.       Analysis**

The Carmack Amendment governs carrier liability for damage to goods during interstate shipment. *See* 49 U.S.C. § 14706(a)(1); *MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006); Under the Carmack Amendment, a carrier may limit its

liability if the carrier: (1) maintains a tariff within the prescribed guidelines of the Interstate Commerce Commission (now the Surface Transportation Board);[2] (2) obtains the shipper's agreement as to her choice of liability; (3) gives the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issues a receipt or bill of lading prior to moving the shipment.  *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) (citing *Rohner Gehrig Co. v. Tri-State Motor Transit*, 950 F.2d 1079, 1081 (5th Cir. 1992) (*en banc*)).  Plaintiff does not appear to dispute the first three elements; therefore, the only issue before the court is whether NAVL issued a receipt or bill of lading prior to moving the Machine.

Plaintiff claims that "[i]t is undisputed that NAVL did not issue a bill of lading or receipt for carriage of the [Machine] until after its delivery at Round Rock."  Plaintiff's Opposition to Motion for Summary Judgment at ¶29 (Doc. 19).  To substantiate this assertion, Plaintiff points to NAVL's practice of hand-delivering a bill of lading at delivery so that DuPont could write their exceptions at destination.  *See* Haley Dep. at 36:12 - 39:16 (Doc. 19, Ex. A); Bill of Lading (Doc. 19, Ex. J).  Thus, Plaintiff concludes, NAVL failed to issue a bill of lading or receipt prior to shipment and cannot limit its liability.  The court disagrees.

An agreement as to the salient terms of the bill of lading can constitute a "receipt" issued prior to the shipment.  *See Hoskins*, 343 F.3d at 779-80 ("we find that the Interstate Order for Service in this case, which contained the agreed upon terms of the contract for carriage, constituted a "receipt" issued prior to the shipment"); *Johnson v. Bekins Van Lines Co.*, 808 F. Supp. 545, 548 (E.D. Tex. 1992) (concluding that an interstate order for service qualified as a "receipt"), *aff'd*, 995 F.2d 221 (5th Cir. 1993), *cert. denied*, 510 U.S. 977 (1993).  The shipper's acceptance of the terms of the bill of lading controls, regardless of whether the carrier issued the actual bill of lading after transport.  *See Johnson*, 808 F. Supp. at 548.  The relevant inquiry is

---

[2] "It is important to note that the first requirement of the four part test has been modified, as the ICC Termination Act of 1995 (49 U.S.C. § 702) abolished the Interstate Commerce Commission, (and the mechanism for filing tariffs) and replaced that Commission with the Surface Transportation Board."  *Gulf Rice Ark., LLC v. Union Pricing Agreementc. R. R. Co.*, 376 F. Supp. 2d 715, 721-22 (S.D. Tex. 2005).

whether the shipper manifested assent to the salient terms of the bill of lading before the shipment commenced.

In this case, DuPont manifested its assent to the terms of the bills of lading prior to shipment. Guzman testified that DuPont wanted the shipment carried out pursuant to the Pricing Agreement and the Schedule of Rates, which had been in place since 1998. *See* Guzman Dep. at 45:19-23, 46:16-24, and 48:15-20 (Doc. 17, Ex. C). In addition, Guzman emailed Haley the details of the shipment, including the number and poundage of crates. Guzman Email re: P.O. 10016506-MD2100 (Doc. 19, Ex. H). Guzman and Haley had also worked together on over forty similar shipments prior to this occasion. In light of these facts, DuPont cannot reasonably dispute that all of the salient terms of the bill of lading were agreed upon prior to shipment. DuPont knew it could have requested a higher valuation to govern liability, but it deliberately chose not to in order to benefit from a reduced shipping rate. Therefore, NAVL has satisfied its burden under the Carmack Amendment to enforce its limitation of liability.

Plaintiff further alleges that NAVL should not be allowed to rely on the liability limitation provision in the shipping agreement because DuPont paid a higher transportation rate for specialized care that NAVL failed to provide (the climate-controlled trucks). Courts accepting this "material deviation" argument claim:

> [I]n cases of shipments by air, rail and truck where the shipper paid an additional charge to ensure specialized safety measures to reduce the risk of damage to its cargo, the carrier's failure to perform those very measures which resulted in damage to the cargo has been found to be a sufficient basis upon which the liability limitation provision in the shipping agreement may be rescinded.

*Praxair Inc. v. Mayflower Transit, Inc.*, 919 F. Supp. 650, 654 (S.D.N.Y. 1996). Plaintiff, however, has not cited any binding authority to the court, and the court declines to adopt this "material deviation" doctrine under the facts of this case. Plaintiff has emphasized its increased payment for a climate-controlled vehicle (and Defendant's alleged breach) without appreciating that it received a substantial transportation rate reduction pursuant to the Pricing Agreement and

the Schedule of Rates.  Furthermore, the parties expressly agreed in the Pricing Agreement that "[i]f any part, term, or provisions of this Agreement is declared unlawful or unenforceable, by judicial determination or otherwise, the remainder of this Agreement shall remain in full force and effect."  Pricing Agreement at ¶ 10 (Doc. 17, Ex. E).  This severability provision undermines Plaintiff's argument that a breach as to a part of the shipping agreement renders the entire shipping agreement (specifically, the liability limitations) void.  DuPont's knowledge of the limitations provision is undisputed.  It intentionally opted for the $0.60 per pound base rate in exchange for lower transportation rates.  Having gained the benefit of the contract, Plaintiff should be bound by the provisions governing NAVL's limited liability.

**IV.**     **Conclusion**

Accordingly, there are no genuine issues of material fact, and NAVL is entitled to partial summary judgment on its limitation of liability.  Thus, it is hereby

**ORDERED** that Defendant's motion for partial summary judgment (Doc. 17) is **GRANTED**.  NAVL's liability, if proven, is limited to $0.60 per pound of the weight of the Machine shipped.

**SIGNED** at Houston, Texas, this 19th day of January, 2007.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE